# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHRISTOPHER VAN HORN,[1]

         **Plaintiff,**

v.

SALVATION ARMY, et al.,

         **Defendants.**

Case No. 23-2009-DDC-ADM

## MEMORANDUM AND ORDER

Pro se plaintiff Christopher Van Horn[2] was convicted of disorderly conduct and criminal trespass in the Municipal Court of Mission, Kansas—a Kansas suburb in the greater Kansas City area. These convictions followed a small verbal fracas inside a Salvation Army thrift store that emerged from plaintiff's refusal to don a face mask while shopping there. Plaintiff appealed his convictions to the state court of general jurisdiction in the pertinent Kansas county. He again was convicted in that court after a de novo proceeding.

Plaintiff then filed this federal lawsuit. His 115-page Amended Complaint (Doc. 38) asserts 13 claims. They include claims under federal civil rights laws and others relying on state law. The defendants include the Salvation Army (and two of its workers) and the City of

---

[1] Throughout the pleadings, plaintiff refers to himself with different naming conventions. *Compare* Doc. 38 at 1 (captioning the case "VanHorn") *with id.* at 2 (using "Vanhorn") *and* Doc. 85 (captioning the case "Van Horn"). This Order adopts the "Van Horn" convention.

[2] Because plaintiff filed his suit pro se, the court construes his filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't serve as a pro se plaintiff's advocate. *See id.* Plaintiff's pro se status doesn't excuse him from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

Mission, Kansas (and the Municipal Court Judge who presided over plaintiff's trial there, the city prosecutor, and several police officers).  Both cohorts of defendants have filed motions that function as Motions to Dismiss.  *See* Doc. 48; Doc. 53.  There's also a controversy about a Motion to Strike (Doc. 86).

Defendants have convinced the court that they should prevail on their motions.  This Order explains why.  These rulings conclude all claims explored in this case and the court thus directs the Clerk to enter a Judgment consistent with this Order.

## I.      Governing Factual Allegations

### *Confrontation Inside the Salvation Army Store*

On January 8, 2022, plaintiff Christopher Van Horn entered the Salvation Army store in Mission, Kansas to shop.  Doc. 38 at 7 (Am. Compl. ¶ 32).  Upon entry, defendant Kelly Keller, a Salvation Army employee, stopped plaintiff and told him that he needed to wear a face mask if he wanted to shop in the store.  *Id.* (Am. Compl. ¶¶ 36–37).  Plaintiff refused to don a mask but he remained inside the store.  *Id.* (Am. Compl. ¶ 38).  Keller told plaintiff that he needed to leave if he refused to wear a mask.  *Id.* (Am. Compl. ¶ 41).  Plaintiff responded to Keller that she couldn't force him to wear a mask.  *Id.* at 8 (Am. Compl. ¶ 46).  Plaintiff took out his cell phone and recorded the following interactions.  *Id.* (Am. Compl. ¶ 48).

Plaintiff asked why he couldn't shop in the store, to which Keller again explained, "because you don't have a mask on sir."  *Id.* (Am. Compl. ¶¶ 49–50).  Keller then turned and instructed defendant Blanche Riding, store manager, to "call the police."  *Id.* (Am. Compl. ¶ 51).  She called the police.  *Id.*

Then, another store patron engaged plaintiff, complaining—seemingly satirically—that his mask was "killing" him.  Doc. 38 at 8 (Am. Compl. ¶ 52).  Following that conversation, plaintiff had conversations with six to ten other store patrons.  *Id.* at 9 (Am. Compl. ¶¶ 53–62).

Plaintiff and patrons expressed their opinions and exchanged political banter. *Id.* During this time, Keller served other customers. *Id.* (Am. Compl. ¶ 63). Eventually, plaintiff agreed to disagree and left the store to return to his car. *Id.* at 10 (Am. Compl. ¶ 68).

### *Plaintiff's Encounter with Mission Police Officers*

After plaintiff left the store, he encountered defendants Megan Brown and Gregory Barnett, City of Mission police officers. Doc. 38 at 10 (Am. Compl. ¶ 71). Officer Brown approached plaintiff and had this exchange with him:

> Officer Brown: Hey, sir? Excuse me, were you the one who . . . [.]
>
> Plaintiff: That's nothing to do with me. I'm leaving.
>
> Officer Brown: Okay but were you not wearing a mask.
>
> Plaintiff: I went in and left. They told me to wear a mask and I said I wasn't wearing one and left.
>
> Officer Brown: Okay, alright, as long you're just leaving, they just called for our assistance.

*Id.* (Am. Compl. ¶ 72) (emphasis omitted). Officer Brown, Officer Barnett, and plaintiff continued speaking in the Salvation Army parking lot. Their conversation included this exchange:

> Plaintiff: I'm free. [Y]ou guys detaining me? Are you going to arrest me[?]
>
> Officer Barnett: [Y]eah you are detained.
>
> Plaintiff: For what?
>
> Officer Barnett: Possibly trespassing.
>
> Plaintiff: How am I trespassing on a public store?
>
> Officer Barnett: Okay, well they were asking you to leave and you did not.
>
> Plaintiff: No, I was leaving.

*Id.* at 11–12 (Am. Compl. ¶ 79). Then, Officer Barnett told plaintiff that he wasn't free to leave until the officers discussed what happened with Keller and Riding. *Id.* at 12 (Am. Compl. ¶ 83).

Defendant Tanner Eddings, another Mission Police Officer, arrived and approached Officer Brown, Officer Barnett, and plaintiff. *Id.* (Am. Compl. ¶ 91). Officer Eddings informed plaintiff that if the Salvation Army wanted to pursue trespassing charges, plaintiff would have to go to jail. *Id.* (Am. Compl. ¶ 92). Officer Eddings then entered the store to investigate. *Id.* at 13 (Am. Compl. ¶ 97). Keller, Riding, and an unknown patron told Officer Eddings that they'd asked plaintiff to leave at least 10 times, that "there were a bunch of people" in the store, and that "they all want[ed] him to leave." *Id.* (Am. Compl. ¶¶ 100–02). Officer Eddings told Keller that the officers "could take [plaintiff] to jail for disorderly conduct" and asked if Keller wanted to "pursue trespassing charges on him[.]" *Id.* at 14 (Am. Compl. ¶ 103) (emphasis omitted). Keller responded, "yep, get him out of here." *Id.* (emphasis omitted). Eddings took Ridings' contact information and told her: "Okay, well we will make sure he never comes back and get him outta [here], take him to jail." *Id.* (Am. Compl. ¶¶ 104–05) (emphasis omitted).

Officer Eddings then left the store, returned to the parking lot, and directed Officer Brown to arrest plaintiff for disorderly conduct and trespassing. *Id.* at 15 (Am. Compl. ¶¶ 112–13). Officer Brown handcuffed plaintiff. *Id.*

Defendant Chad Hodge, a City of Mission Police Department supervisor, arrived next. *Id.* at 16 (Am. Compl. ¶ 119). Officer Hodge ordered plaintiff to be held in jail for 18 hours. *Id.* at 17 (Am. Compl. ¶ 133). Plaintiff explained his side of the story, including how he recorded the interaction on his cell phone. *Id.* at 16–17 (Am. Compl. ¶¶ 120–22). The officers declined to watch plaintiff's cell phone footage. *Id.* at 17 (Am. Compl. ¶¶ 123–24). Officer Hodge helped

4

put plaintiff into the police car and the officers took plaintiff to the county jail. *Id.* (Am. Compl. ¶ 132).

## II.    Procedural History of Municipal Court Proceedings and the Claims Asserted Here

On February 17, 2022, the City of Mission's Municipal Court initially arraigned plaintiff. *Id.* at 3. Defendant David Martin, City of Mission prosecutor, pursued disorderly conduct and criminal trespassing charges against him before defendant Judge Keith Drill—a Municipal Court judge for that city's Municipal Court. Doc. 38 at 5, 18 (Am. Compl. ¶¶ 22, 23, 139). At the Municipal Court trial, defendants Riding, Keller, Officer Eddings, Officer Barnett, and Officer Hodge testified. *Id.* at 18–41 (Am. Compl. ¶¶ 138–289). Judge Drill ultimately found plaintiff guilty of disorderly conduct and criminal trespass. *Id.* at 18 (Am. Compl. ¶ 139).

Plaintiff appealed his conviction to the District Court of Johnson County, Kansas. *See* Doc. 54-2 (Johnson Cnty. Dist. Ct. Order). The Johnson County District Court arraigned plaintiff and Jacob Turner—Martin's subordinate in the City Prosecutor's office—attended. *Id.* at 3; Doc. 38 at 106–07 (Am. Compl. ¶¶ 591, 593). The District Court later held an evidentiary hearing on plaintiff's appeal. Doc. 54-2 at 2 (Johnson Cnty. Dist. Ct. Order). Plaintiff argued that the Municipal Court wrongly had convicted him because he never received a copy of his charging offenses or the complaint against him. *Id.* at 6–7. And, plaintiff argued, the Municipal Court improperly arraigned him twice. *Id.* at 3. Kansas State Court District Judge Joyce denied plaintiff's appeal. *Id.* at 9. He found that the Municipal Court had afforded plaintiff full due process because: (1) the District Court properly had arraigned plaintiff; (2) service of process was satisfied after plaintiff posted bond; and (3) plaintiff received notice of the charges against him before his initial appearance in Municipal Court. *Id.* at 3–8.

Plaintiff then filed this lawsuit. Doc. 1. He's since filed an Amended Complaint, bringing 13 claims against defendants. Doc. 38. They assert:

Count I.     Conspiracy to Interfere with Civil Rights against Salvation Army, Riding, Keller, Officer Brown, Officer Barnett, Officer Eddings, and Officer Hodge (§ 1985 claim)

Count II.    False Arrest against Salvation Army, Riding, and Keller (Declaratory Judgment Act claim)

Count III.   Unreasonable Seizure under the Fourth Amendment against Salvation Army, Riding, Keller, Officer Brown, Officer Barnett, Officer Eddings, and Officer Hodge (§ 1983 claim)

Count IV.    Retaliatory Arrest under the Free Speech Clause of the First Amendment against Officer Brown, Officer Barnett, Officer Eddings, and Officer Hodge (§ 1983 claim)

Count V.     Conspiracy to Falsely Arrest against Officer Brown, Officer Barnett, Officer Eddings, and Officer Hodge (§ 1983 claim)

Count VI.    Conspiracy to Interfere with Civil Rights against Officer Brown, Officer Barnett, Officer Eddings, Officer Hodge, Judge Drill, and Martin (§ 1985 claim)

Count VII.   Illegal Local Governing Body Practice or Custom against City of Mission (§ 1983 *Monell* claim)

Count VIII.  Due Process Violation under the Fourteenth Amendment against Officer Brown, Officer Barnett, Officer Eddings, Officer Hodge, Judge Drill, and Martin in their private and official capacities (§ 1983 claim)

Count IX.    Failure to Supervise and Train against Officer Hodge in his personal and official capacity (§ 1983 claim)

Count X.     Failure to Train against Martin in his personal and official capacity (§ 1983 claim)

Count XI.    Civil Conspiracy against Keller and Riding (Kansas state law claim)

Count XII.   False Imprisonment against Salvation Army, Keller, and Riding (Kansas state law claim)

Count XIII.  Vicarious Liability against Salvation Army (Kansas state law claim)

The Salvation Army Defendants filed a Motion to Dismiss (Doc. 48) Counts I–III and XI–XIII. And the Mission Defendants filed a Motion Judgment on the Pleadings (Doc. 53) in their favor on Counts III–X. The Mission Defendants also filed a Motion to Strike (Doc. 86) plaintiff's sur-reply (Doc. 85). The court grants all three motions, striking plaintiff's sur-reply. This decision resolves all pending motions and leaves no claims standing. The court explains its reasoning, below. It begins with the Salvation Army Defendants' Motion to Dismiss.

## III.     Motion to Dismiss (Doc. 48)

The Salvation Army Defendants move to dismiss all claims against them in the Amended Complaint under Fed. R. Civ. P. 12(b)(6). They argue that plaintiff has failed to allege sufficient facts capable of supporting plausible claims. Thus, they contend, the court should dismiss all claims asserted against them for failure to state a claim for which relief can be granted. Doc. 48. The court analyzes their arguments against Counts I–III and XI–XIII, below. But first, the court recites the legal standard governing a motion to dismiss under Rule 12(b)(6).

### A.     Legal Standard

Fed. R. Civ. P. 12(b)(6) provides that "a party may assert the following defenses by motion: . . . failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss made under Rule 12(b)(6), the court must assume that the factual allegations in the complaint are true. *Id.* (citing *Twombly*, 550 U.S. at 555). But

the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under this part of Rule 12, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### B.    Unreasonable Seizure (Count III)

Count III of the Amended Complaint claims that the Salvation Army Defendants, among others, violated plaintiff's constitutional rights when they arrested him after he had left the Salvation Army store.  Doc. 38 at 66–71 (Am. Compl.).  This claim invokes § 1983 seeking to vindicate plaintiff's Fourth Amendment right against unreasonable seizures. *Id.* at 66.

Generally speaking, a § 1983 claim requires that "the challenged conduct must constitute state action." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000).  But sometimes, conduct by private persons and private organizations can qualify as state action if the conduct is "fairly attributable to the State." *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) (citation and

internal quotation marks omitted).  As our Circuit has explained, private conduct is "fairly attributable to the state"—and thus actionable—when two conditions are met:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible.  Second, the private party must have acted together with or . . . obtained significant aid from state officials or engaged in conduct otherwise chargeable to the State.

*Scott*, 216 F.3d at 906 (citation and internal quotation marks omitted).

The Circuit has recognized four situations when one fairly may attribute acts by a private actor to the state.  The cases refer to those circumstances as:  (1) the Nexus Test; (2) a Symbiotic Relationship; (3) Joint Action; and (4) Public Function.  *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448–56 (10th Cir. 1995).  Here, plaintiff invokes the third alternative, the Joint Action exception.  *See* Doc. 38 at 66 (Am. Compl. ¶ 417).  He alleges that the Salvation Army "conspired" with the City of Mission's police officers "when they instigated, encouraged and directed the City of Mission Police to arrest" plaintiff "without probable cause to believe that [he] had engaged in criminal activity or committed any crime."  *Id.*

"State action is . . . present if a private party is a 'willful participant in joint action with the State or its agents.'"  *Gallagher*, 49 F.3d at 1453 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).  To allege joint action sufficiently, "the allegations must evidence a 'specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action.'"  *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1264 (D. Kan. 2008) (quoting *Gallagher*, 49 F.3d at 1455).  And where a plaintiff invokes this exception, he must allege "conduct under color of state law by implicating state officials in a conspiracy with private defendants, [but] 'mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action.'"  *Id.* at 1263 (quoting *Raiser v. Kono*, 245 F. App'x 732, 736 (10th Cir. 2007)).

Plaintiff here recognizes his pleading obligation.  He repeatedly asserts that this joint action theory requires allegations that the Salvation Army Defendants and state actors—police officers from the City of Mission, Kansas—engaged in joint action.  *See, e.g.*, Doc. 38 at 66 (Am. Compl. ¶¶ 413–14, 417) (alleging that "[t]ogether the individual Defendants conspired to unlawfully seize" plaintiff; "individual Defendants acted under color of law"; and Salvation Army Defendants and the City of Mission's police offers "conspired to violate [plaintiff's] clearly established right to be free from unlawful seizures[.]").  But he never alleges any *facts*) capable of showing that the Salvation Army Defendants engaged in joint action with a governmental actor.  Settled law makes it clear:  "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."  *Fisher*, 531 F. Supp. 2d at 1263 (quoting *Raiser*, 245 F. App'x at 736).

The closest plaintiff comes to pleading a fact capable of supporting a finding of joint action is his assertion that Keller—one of the Salvation Army Defendants—instructed another Salvation Army Defendant (Riding) to "call the police."  Doc. 38 at 8 (Am. Compl. ¶ 51).  Then, plaintiff alleges, Mission police officers arrived at the scene and entered the store to investigate.  *Id.* at 12–13 (Am. Compl. ¶¶ 91, 97).  One of the officers (defendant Officer Eddings) spoke with the two Salvation Army employees—defendants Keller and Riding—who told the officer that they'd asked plaintiff to leave the Salvation Army store at least 10 times, that "there were a bunch of people" in the store, and "they all want[ed] him to leave."  *Id.* at 13 (Am. Compl. ¶¶ 100–02).  The officer allegedly then asked whether defendant Keller wanted to "pursue trespassing charges" against plaintiff, and Keller responded, "yep, get him out of here."  *Id.* at 14 (Am. Compl. ¶ 103) (emphasis omitted).  According to plaintiff, the officer incorrectly deduced

from this information that he had probable cause to arrest plaintiff for disorderly conduct and trespassing.  *Id.* at 14 (Am. Compl. ¶¶ 106–07).  Mission police officers then arrested plaintiff for disorderly conduct and trespassing.  *Id.* at 15 (Am. Compl. ¶ 113).

But none of these allegations can enable a finding or inference that any of the Salvation Army Defendants acted with a "'specific goal'" to violate plaintiff's constitutional rights.  *See Fisher*, 531 F. Supp. 2d at 1264 ("To sufficiently allege joint action, the allegations must evidence a 'specific goal to violate plaintiff's constitutional rights by engaging in a particular course of action.'") (quoting *Gallagher*, 49 F.3d at 1455).  The Circuit's analysis in *Carey v. Continental Airlines Inc.* illustrates the point.  823 F.2d 1402 (10th Cir. 1987).

In *Carey*, plaintiff—a Continental Airlines pilot who was out on strike—situated himself near a gate at Tulsa's International Airport.  *Id.* at 1403.  From that vantage point, plaintiff watched aircraft maintenance operations and passengers as they boarded one of Continental's aircraft.  *Id.*  One of Continental's employees asked plaintiff to leave the gate area, but he refused.  *Id.*  The Continental employee then called his airline's airport manager in Tulsa, who came to the gate.  *Id.*  After he arrived, the airline's airport manager again asked plaintiff to leave.  He again refused.  *Id.*  So, the airport manager called for an airport security officer—a Tulsa police officer assigned to provide security at the airport.  *Id.*  The airport manager informed the police officer that plaintiff had refused to leave the gate and thus was trespassing. *Id.*  The police officer then asked plaintiff to leave the area.  Again, he refused.  *Id.*  The police officer called for backup officers and three more police officers came to the gate.  The officers walked plaintiff to the airport's security station, and then plaintiff and Continental's airport manager "were taken" to the Tulsa County Jail.  *Id.*  There, the airport manager signed a complaint charging plaintiff with trespass.  *Id.*  Though Tulsa's Municipal Court later dismissed

the trespassing charge, plaintiff filed a § 1983 action against the airline and its airport manager.

*Id.*

The district court granted summary judgment against plaintiff on his § 1983 claim as well as other state law claims. *Id.* Plaintiff appealed and the Tenth Circuit affirmed the § 1983 ruling. *Id.* at 1405. The court's reasoning applies with equal force to the facts alleged here:

> [Plaintiff] did not allege facts from which we might conclude that his arrest resulted from any concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power. If [the airport manager] himself made a "citizen's arrest" of [plaintiff], as [plaintiff] asserts, this does not make [the airport manager] a state actor. [The airport manger's] complaining about [plaintiff]'s presence to a Tulsa police officer who, acting within the scope of his statutory duties, arrested [plaintiff] after questioning him, does not, without more, constitute state action for which [the airport manager] can be held responsible. Because [plaintiff] neither alleged nor offered evidence to support any concerted action between [the airport manager] and the police, the district court appropriately granted summary judgment on the § 1983 claim.

*Id.* at 1404 (internal citations omitted).

Another Tenth Circuit case, *Jones v. Wal-Mart Stores, Inc.*, is similar. No. 93-5240, 1994 WL 38788, at *1 (10th Cir. July 27, 1994). In it, one of Wal-Mart's loss prevention officers suspected plaintiff and her family members of shoplifting. *Jones*, 1994 WL 387887, at *1. The loss prevention officer approached plaintiff and accused her of shoplifting. *Id.* The loss prevention officer asked plaintiff to accompany the loss prevention employee to the store's security office. Plaintiff complied. *Id.* Once there, the loss prevention officer searched plaintiff's purse, "proceeded to have [plaintiff] arrested," and "had the police called." *Id.* A police officer arrived at the store, talked with store employees about the incident, and provided a citizen's arrest form. *Id.* The loss prevention officer completed the form, and the officer took plaintiff to jail on a petty larceny charge. Later, the charge was dismissed. *Id.* Plaintiff then

sued, invoking § 1983.  The district court granted summary judgment against the federal claim.

*Id.*

> Plaintiff appealed and the Circuit affirmed.  Its state action analysis is pertinent here.
>
> An individual does not act under color of law merely by reporting an alleged crime to police officers who take action thereon.  Nor does the making of a citizen's arrest constitute acting under color of law for 1983.
>
> Generally, merchants are not considered to be acting under color of law for purposes of 1983 when they detain a person suspected of shoplifting or other crimes, call the police, or make a citizen's arrest.

1994 WL 387887 at *3 (collecting authorities) (citations omitted); *see also Benavidez v. Gunnell*,

722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does

not constitute joint action under color of sate law which renders a private citizen liable under

§§ 1983 or 1985." (citation omitted)).

These case authorities convince the court that the Amended Complaint here, despite its

length, never alleges facts which could permit a reasonable finding of joint action between any of

the Salvation Army Defendants and the City of Mission, its officers, or another party possessing

state power.  The best plaintiff can do is assert conclusions about joint action.  But as the

Supreme Court has explained, broad and conclusory pleading "simply will not do" to survive a

motion to dismiss.  *Twombly*, 550 U.S. at 555. The court thus grants the Salvation Army

Defendants' Motion to Dismiss Count III's claim under § 1983.

The court now turns to plaintiff's next claim, alleging that Salvation Army Defendants

conspired with Mission police officers to discriminate against him as an un-masked individual.

Doc. 38 at 57–61 (Am. Compl. ¶¶ 343–69).

## C.    Interference with Civil Rights (Count I)

In Count I, plaintiff asserts that Salvation Army Defendants "conspired with the City of

Mission Police Officer defendants directly and indirectly to deprive [plaintiff] the equal

enjoyment, access, and use of a public accommodation, as protected by . . . the Civil Rights Act of 1964[.]"  Doc. 38 at 60 (Am. Compl. ¶ 367).  And plaintiff alleges this conspiracy was motivated "as a result of [plaintiff] invoking his right to choose his own medical treatment and freedom of speech"—*i.e.*, choosing to not wear a mask.  *Id.* at 59–60 (Am. Compl. ¶¶ 364–66).

Plaintiff brings this conspiracy claim under 42 U.S.C. § 1985.  He alleges, albeit abstractly, that the Salvation Army Defendants conspired with police officers to interfere with his civil rights.  Doc. 68 at 15–16.  This statute's pertinent portion provides:

> If two or more persons . . . conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [or] cause to be done, any act in furtherance of the object of such conspiracy . . . the party so injured or deprived may have an action for the recovery of damages[.]

42 U.S.C. § 1985(3).  Case law has explained that a viable § 1985(3) claim requires:  "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citation omitted).  But even when a plaintiff's conspiracy claim satisfies all four elements, "§ 1985(3) does not apply to all tortious, conspiratorial interferences with the rights of others[.]"  *Id.* (internal quotation marks and citation omitted).  Instead, Section 1985(3) applies "only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Id.* (internal quotation marks and citation omitted).  So, to state a claim under § 1985(3), "a plaintiff must establish that a class-based or racially discriminatory motive lurks behind the conspiratorial activities."  *Babbar v. Ebadi*, No. 99-3040, 2000 WL 702428, at *9 (10th Cir. 2000).  The court evaluates whether plaintiff has pleaded facts that could support a finding of the requisite conspiracy.

To exist, a "civil conspiracy requires a meeting of the minds or agreement among the defendants and concerted action." *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 770 (10th Cir. 2001). "The bare assertion that certain officials 'conspired' is exactly the kind of conclusory statement [the court shouldn't] consider when assessing a motion to dismiss." *Gowadia v. Stearns*, 596 F. App'x 667, 671 (10th Cir. 2014). And concerted action doesn't follow necessarily from parallel action because "parallel action, oftentimes, is an expected result of innocent behavior and is thus just as consistent with independent actions as it is with conspiracy." *Id.*

As discussed at length when the court addressed plaintiff's § 1983 claim, above, plaintiff hasn't alleged facts sufficient to support a plausible inference that Salvation Army Defendants conspired with Mission police officers. That is, plaintiff has failed to allege plausibly that the Salvation Army Defendants conspired with Mission police officers. Plaintiff merely recites his interactions with Salvation Army Defendants and then police officers from the City of Mission, Kansas. He then draws the ipse dixit conclusion that the Salvation Army Defendants conspired with their co-defendants. But he never alleges any facts that could support a finding of a meeting of the minds or an agreement to violate plaintiff's rights.

Our Circuit has made it clear. A "bare assertion that certain officials 'conspired' is the kind of conclusory statement we are not to consider when assessing a motion to dismiss." *Gowadia*, 596 F. App'x at 671. Plaintiff fails to allege a valid § 1985(3) claim against Salvation Army Defendants.

### D.    Declaratory Judgment (Count II)

Next, in Count II, plaintiff requests a declaratory judgment and brings a false arrest claim. Doc. 38 at 61–65 (Am. Compl. ¶¶ 370–409). Mindful of plaintiff's status as a pro se litigant, the court construes plaintiff's claims as best it can. *Hunt v. Uphoff*, 199 F.3d 1220, 1223

(10th Cir. 1999) ("In determining whether dismissal is proper, . . . we must liberally construe the allegations of a pro se complaint.").  While it's hardly clear, plaintiff—giving him the full benefit of broad construction—appears to intend that Count II ask the court to answer several questions. These questions as identified by plaintiff's claim, ask:

1)  [Do any of the Salvation Army Defendants] act under color of law when they conspire with the City of Mission Police [D]epartment to deprive [plaintiff] of his right to:

    a.  be free from arrest and imprisonment?

    b.  be free from arrest and imprisonment over a civil matter?

    c.  be free from arrest and imprisonment without probable cause? . . .

2)  [Do any of the Salvation Army Defendants] act under the color of law when they instigate, assist, and encourage the Mission Police to arrest and imprison [plaintiff] without probable cause?

Doc. 38 at 64–65 (Am. Compl. ¶¶ 402–05, 409).

The Declaratory Judgment Act doesn't create an independent cause of action.  *See Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671–74 (1950) (outlining "limited procedural purpose of the Declaratory Judgment Act"); *Alvidrez v. Ridge*, 311 F. Supp. 2d 1163, 1166 (D. Kan. 2004) ("The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* does not create an independent cause of action, it only provides a form of relief previously unavailable.").  "In other words, the Act 'enlarges the range of remedies available in federal courts,' *Skelly Oil Co.*, 339 U.S. at 671, but it leaves 'substantive rights unchanged,' *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)."  *Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022).  "To maintain an action for a declaratory judgment, then, [plaintiff] must assert a

16

valid federal cause of action—one that exists independent of any request for declaratory relief." *Id.*

The court already has concluded that plaintiff has failed to allege facts sufficient to support a plausible inference that Salvation Army Defendants conspired with Mission police officers, thus acting under the color of state law. This conclusion dooms plaintiff's claims under § 1983 and 1985(3). Invoking the federal Declaratory Judgment Act can't fill that gap. In sum, plaintiff was bound to plead a cognizable cause of action before he properly can invoke the Declaratory Judgment Act to secure answers to the questions Count II poses. He hasn't done so, and this failure also ends his bid for declaratory relief.[3]

### E. Civil Conspiracy, False Imprisonment, and Vicarious Liability (Count XI–XIII)

The court addresses all of plaintiff's state law claims in one place, near the end of this Order. *See* Section VI, below.

### F. Motion to Dismiss Conclusion

In summary, the court grants Salvation Army Defendants' Motion to Dismiss (Doc. 48) because plaintiff has failed to allege plausibly that the Salvation Army Defendants conspired with law enforcement officer from the City of Mission. So, the Salvation Army Defendants can't qualify as state actors for purposes of plaintiff's federal constitutional claims against them. The court thus dismisses Counts I–III, plaintiff's federal claims against Salvation Army Defendants, without prejudice.[4] The court also declines to exercise supplemental jurisdiction

---

[3]     The court is mindful that state claims might provide the substantive claim supporting a declaratory judgment. But later in this Order, the court exercises its discretion to decline supplemental jurisdiction over plaintiff's state law claims. So, plaintiff's state law claims can't rescue his bid for declaratory relief.

[4]     The district court has discretion to decide whether to dismiss an action with or without prejudice. *Brown v. Baeke*, 413 F.3d 1121, 1123–24 (10th Cir. 2005). Reversal requires a clear abuse of discretion.

over Counts II and XI–XIII, plaintiff's state law claims against Salvation Army Defendants, and dismisses them without prejudice.  None of plaintiff's claims against Salvation Army Defendants remain.

The court now moves to Mission Defendants' pending Motion to Strike (Doc. 86) and Motion for Judgment on the Pleadings (Doc. 53).

## IV.        Motion to Strike (Doc. 86)

The court's judgment on the pleadings analysis relies on the Motion to Strike (Doc. 86) outcome.  So, the court begins with that motion.

The Mission Defendants[5] filed a Motion for Judgment on the Pleadings (Doc. 53) and a 30-page Memorandum in Support (Doc. 54).  Local Rule 7.1 provides that "all motions"—other than discovery-related, class certification, or summary judgment motions—"must not exceed 15 pages[.]"  D. Kan. R. 7.1(d)(3).  The Mission Defendants realized their error and filed a Motion for Leave to Exceed Page Limitations (Doc. 82) covering their already filed Memorandum in Support (Doc. 54).  Plaintiff responded (Doc. 83), opposing the Mission Defendants' request to exceed page limits.  The court promptly decided the motion to exceed page limits, granting it on August 11, 2023.  Doc. 23.  But plaintiff wasn't finished.  Three days after the court had issued a decision on the page limits question, plaintiff filed a document he entitled:  "Memorandum in Support of Plaintiff's Response in Opposition to Mission Defendants['] Motion of Mission Defendants for Leave to Exceed Page Limitations for Previously Filed Memorandum in Support

_____

*Id.*  The court exercises this discretion and dismisses without prejudice for three reasons.  First, defendants' Motion to Dismiss did not ask to dismiss plaintiff's claims with prejudice.  Doc. 48.  Second, dismissal with prejudice would prejudice unfairly the pro se plaintiff if he later retained counsel.  And third, plaintiff possibly could allege additional facts regarding defendants' alleged conspiracy.

[5]        To refresh, the term "Mission Defendants" refers to Officers Brown, Barnett, Eddings, and Hodge, as well as Judge Drill, Prosecutor Martin, and the City of Mission.  In other words, the Mission Defendants refers to all defendants who aren't part of the Salvation Army Defendants.

of Motion for Judgment on the Pleadings" (Doc. 85).  The Mission Defendants characterize

plaintiff's filing as an improper sur-reply and now ask the court to strike that filing (Doc. 86).

### A.        Legal Standard

Local Rule 7.1 limits motion briefing to the motion (with a memorandum in support), a

response, and a reply.  D. Kan. Rule 7.1(c).  Sur-replies typically aren't allowed.  *Taylor v.*

*Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd*, 189 F. App'x 752 (10th Cir. 2006).

Instead, a party may file a sur-reply only with leave of court, under "rare circumstances," and

after showing good cause.  *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL

982903, at *1 (D. Kan. Sept. 23, 1998) (citations and internal quotation marks omitted).  For

example, when a moving party uses their reply to present new evidence or new legal arguments

and the court plans to consider or rely on that new material, the court should give the nonmoving

party an opportunity to respond to the new material by a sur-reply.  *Green v. New Mexico*, 420

F.3d 1189, 1196 (10th Cir. 2005) ("Generally, the nonmoving party should be given an

opportunity to respond to new material raised for the first time in the movant's reply.").  The

rules governing sur-replies are based on common sense.  They "are not only fair and reasonable,

but they assist the court in defining when briefed matters are finally submitted and in minimizing

the battles over which side should have the last word." *Humphries*, 1998 WL 982903, at *1

(citation and internal quotation marks omitted).

Here, the sur-reply doesn't respond to new arguments submitted in the Mission

Defendants' Reply and plaintiff presents no new arguments in it. *See Doc. 85.*  But the sur-reply

carries an attachment:  a Complaint of Bar Attorney Misconduct which plaintiff filed against

Mission Defendants' counsel.  Doc. 85-1 (Compl. Bar Att'y Misconduct).  The Mission

Defendants assert that plaintiff "offers no excuse or justification for filing a sur-reply without

leave but instead to use it as a vehicle to publicly publish the Bar Complaint."  Doc. 86 at 2.

Plaintiff hasn't responded. Bar Complaint aside—plaintiff shows no good cause or rare circumstances jusitfying his sur-reply. Also, plaintiff's sur-reply addresses a motion that was moot when plaintiff filed the sur-reply. The court already had granted Mission Defendants' leave to exceed page limitations. *See* Doc. 84. Thus, there's ample reason to grant Mission Defendants' Motion to Strike and the court now does so. The Mission Defendants' Motion to Strike (Doc. 86) plaintiff's sur-reply (Doc. 54) is granted.

The court turns next to the substance of the Mission Defendants' Motion for Judgment on the Pleadings (Doc. 53).

## V. Motion for Judgment on the Pleadings (Doc. 53)

The Mission Defendants have filed a Motion for Judgment on the Pleadings (Doc. 53). Plaintiff's opposition to this motion contends that the Mission Defendants have committed procedural error; *i.e.*, they filed a motion for judgment on the pleadings before the pleadings closed. *See* Doc. 72 at 4 (quoting Fed. R. Civ. P. 12(c)). The court's analysis of the Mission Defendants' Motion for Judgment on the Pleadings thus begins with plaintiff's argument about procedural error. Concluding that the procedural error isn't a motion ending event, the court then turns to the substance of the motion presented by the Mission Defendants.

### A. Procedural Defect Under Rule 12(c)

When a case involves multiple defendants, as this one does, "the pleadings are not 'closed' until all defendants file an answer[.]" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, N.M.*, 993 F.3d 802, 810 n.3 (10th Cir. 2021) (quoting *Gorenc v. Klaassen*, No. 18-2403-DDC-JPO, 2019 WL 2523566, at *2 (D. Kan. June 19, 2019) (collecting cases)). This is true "even when one defendant has filed a motion to dismiss instead of an answer." *Gorenc*, 2019 WL 2523566 at *2 (citation and internal quotation marks omitted). "'And, until all defendants have filed an answer, 'a remedy under Rule 12(c) is not available.'" *Id.* (quoting

*Scottsdale Ins. Co. v. Doe*, No. 7:13-CV-00342, 2014 WL 3778510, at *3 (W.D. Va. July 30,

2014)); *see also Stands Over Bull v. Bureau of Indian Affs.*, 442 F. Supp. 360, 367 (D. Mont.

1977) ("When a[ny] defendant has failed to file an answer, a motion for judgment on the

pleadings is not the correct procedural remedy." (citing *Gen. Motors Corp. v. Blevins*, 144 F.

Supp. 381, 389 (D. Colo. 1956))).

      Plaintiff thus is right about the procedural point his opposition makes.  But that doesn't

end the matter, the Mission Defendants counter.  They contend that the court properly may reach

the substance of their motion because "courts typically will construe a premature Rule 12(c)

motion as if it were brought under Rule 12(b)."  5C Charles A. Wright & Arthur R. Miller,

*Federal Practice & Procedure* § 1368 (3d ed. 2024).  This approach makes good sense, the

Mission Defendants say, because the court applies the same standard to a Rule 12(c) motion as it

does to a Rule 12(b) motion.  They're right.  *See Nicks v. Brewer*, No. 10-cv-1220-JAR-JPO,

2010 WL 4868172, at *2 (D. Kan. Nov. 23, 2010) ("The distinction between the two motions is

purely formal, because the court must review a Rule 12(c) motion under the same standard that

governs a Rule 12(b)(6) motion" to dismiss.).

      The court agrees with the Mission Defendants and thus exercises its discretion to

construe their Motion for Judgment on the Pleadings as a Motion to Dismiss made under Fed. R.

Civ. P 12(b)(6).  It does so for three reasons.  *One*, that the Salvation Army Defendants haven't

filed their Answer will not affect pleading closure on the claims against the Mission Defendants.

*Two*, the same standard applies to the Mission Defendants' motion whether the court treats it as

one seeking judgment on the pleadings or as one seeking to dismiss those claims.  *Atl. Richfield

Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  *Last*, addressing the

substance of movants' motion now will serve the interests advanced by Rule 1 of the Federal

Rules of Civil Procedure—it will "secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

### B.     Legal Standard

Since the court has elected to treat the motion as a Motion to Dismiss made under Rule 12(B)(6), the court applies the same standard it applied to the motion by the Salvation Army Defendants.  The court already identified that standard, *see* Section III.A., above, and there's no reason to repeat it here.

### C.     Federal Claims

Plaintiff brings § 1983 and § 1985 claims against the Mission Defendants claiming unreasonable seizure, retaliatory arrest, conspiracy to falsely arrest, conspiracy to violate equal protection rights, due process violations, and failure to supervise and train.  The Mission Defendants assert that the Amended Complaint fails to allege facts capable of providing plausible support for each claim.  Doc. 54 at 15–27.  The Mission Defendants also assert that judicial immunity shields Judge Drill, prosecutorial immunity shields Prosecutor Martin, and qualified immunity shields Officers Brown, Barnett, Eddings, and Hodge from the claims brought against them in their official capacities.  *Id.* at 14–15, 28.  The court addresses these immunity arguments before it considers their substantive arguments.

#### 1.     Immunity

The court begins with Mission Defendants' immunity arguments because immunity establishes "immunity from suit rather than a mere defense to liability."  *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (qualified immunity); *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) (judicial immunity); *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976) (prosecutorial immunity).  And the court seeks to avoid "[u]nnecessary litigation of constitutional issues" which "wastes the

parties' resources." *Pearson*, 555 U.S. at 237.  The court begins with judicial immunity, then moves to prosecutorial immunity, and concludes with qualified immunity.

### a.  Judicial Immunity

Plaintiff sues Judge Keith Drill in both his individual and official capacity.  Doc. 38 at 5–6 (Am. Compl. ¶ 23).  And plaintiff asserts two claims against Judge Drill:  Count VI (§ 1985 claim for conspiracy to violate plaintiff's civil rights) and Count VIII (§ 1983 claim for violating plaintiff's procedural due process rights).  *Id.* at 80–84, 97–102 (Am. Compl. ¶¶ 498–518, 548–74).  The Mission Defendants argue that Judge Drill is absolutely immune from the claims against him in his individual and official capacity.  Doc. 54 at 15.  They're right.

Plaintiff's claims against Judge Drill in his individual and official capacity are subject to dismissal based on judicial immunity.  "Personal immunities . . . are immunities derived from common law which attach to certain governmental officials in order that they not be inhibited from 'proper performance of their duties.'"  *Russ v. Uppah*, 972 F.2d 300, 302–03 (10th Cir. 1992) (citing *Forrester v. White*, 484 U.S. 219, 223 (1988)).  A "state judge is absolutely immune from § 1983 liability except when the judge acts 'in the clear absence of jurisdiction.'"  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority[.]")).  Only actions taken outside a judge's judicial capacity can deprive a judge of judicial immunity.  *Stump*, 435 U.S. at 356–57; *see also Sigg v. Dist. Ct. of Allen Cnty., Kan.*, No. 11-2625-JTM, 2012 WL 941144, *4 (D. Kan. March 20, 2012) (explaining that judges are "absolutely immune from civil liability while carrying out their judicial functions," which "are those acts performed by a judge when the parties deal with the judge in her judicial capacity" (citations omitted)).

23

Count VI never alleges that Judge Drill acted outside his judicial capacity.  Instead, plaintiff alleges that Judge Drill conspired with his co-defendant, Prosecutor Martin, to prosecute and fine plaintiff for lawful conduct.  Doc. 38 at 83 (Am. Compl. ¶¶ 512, 514).  Such acts fall well within Judge Drill's judicial capacity.  Plaintiff never alleges that Judge Drill acted outside his judicial capacity in Count VIII, either.  *Id.* at 97–102 (Am. Compl. ¶¶ 548–74).  Instead, plaintiff alleges that Judge Drill violated his due process rights when Judge Drill held an arraignment hearing without following Kan. Stat. Ann. § 12-4401.  *Id.* at 100–01 (Am. Compl. ¶¶ 565–68).  This statute provides that:  "Every person charged with violation of an ordinance shall receive a copy of the complaint, and shall not be required to plead until he or she shall have had a reasonable time to examine the same, to obtain counsel and to determine his or her plea."  Kan. Stat. Ann. § 12-4401.  Plaintiff alleges that he never received a copy of the complaint.  Doc. 38 at 100–01 (Am. Compl. ¶¶ 565–68).  And, according to plaintiff, Judge Drill required plaintiff to plead without him ever receiving the complaint, thus depriving plaintiff of a reasonable time to determine his plea.  *Id.*  These allegations target judicial procedure, the arraignment hearing, and judicial actions—all actions Judge Drill took in his role as a Municipal Judge in the City of Mission.

Judicial immunity thus protects Judge Drill from plaintiff's claims for due process and conspiracy to interfere with civil rights.  "Absolute judicial immunity applies to all claims, whether official-capacity or personal-capacity, that are based on judicial acts."  *McDonald v. Citibank N.A.*, No. 21-CV-00427-PAB-NRN, 2021 WL 5736437, at *4 (D. Colo. Dec. 2, 2021) (collecting cases). The court thus dismisses Counts VI and VIII against Judge Drill.

### b.     Prosecutorial Immunity

Plaintiff has made three claims against Prosecutor David Martin in both his individual and official capacity:  (1) Count VI (§ 1985 claim for conspiracy to interfere with civil rights);

(2) Count VIII (§ 1983 claim asserting procedural due process violations); and (3) Count X

(§ 1983 claim for failure to supervise and train).  *Id.* at 80–84, 97–102, 106–07 (Am. Compl.

¶¶ 498–518, 548–74, 588–96).  The Mission Defendants argue that Prosecutor Martin enjoys

prosecutorial immunity from suit in his individual capacity.  They're right.

"Absolute prosecutorial immunity is a complete bar to a suit for damages under 42

U.S.C. § 1983."  *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1208 (10th Cir. 2022) (citation and

internal quotation marks omitted).  A prosecutor enjoys prosecutorial immunity for acts that are

"intimately associated with the judicial phase of the criminal process[.]"  *Imbler v. Pachtman*,

424 U.S. 409, 430 (1976).  Such activities include "conduct in 'initiating a prosecution and in

presenting the State's case,' . . . insofar as that conduct is 'intimately associated with the judicial

phase of the criminal process[.]'"  *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424

U.S. at 430–31).  Such prosecutorial immunity is limited, however, to actions that "involve the

prosecutor's role as advocate for the State rather than his role as administrator or investigative

officer[.]"  *Id.* at 491 (citation and internal quotation marks omitted).

To discern whether a prosecutor deserves absolute immunity in a specific context, courts

examine "the nature of the function performed, not the identity of the actor who performed it."

*Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quotation marks and internal citation omitted).

The Supreme Court has emphasized that functions "undertaken by a prosecutor in preparing for

the initiation of judicial proceedings or for trial, and which occur in the course of his role as an

advocate for the State, are entitled to the protections of absolute immunity."  *Buckley v.

Fitzsimmons*, 509 U.S. 259, 273 (1993).  Such "acts must include the professional evaluation of

the evidence assembled by the police and appropriate preparation for its presentation at trial[.]"

*Id.*

In Count VI—the § 1985 claim for conspiracy to interfere with civil rights—plaintiff alleges that Prosecutor Martin conspired with Judge Drill to deny plaintiff "the right to be free from discrimination in a place of public accommodation[,]" and to prosecute and fine plaintiff for lawful conduct.  Doc. 38 at 83 (Am. Compl. ¶¶ 512, 514).  In Count VIII—plaintiff's § 1983 claim for a procedural due process violation—he alleges that Prosecutor Martin deprived plaintiff of due process when Prosecutor Martin refused "to produce a verified complaint."  *Id.* at 101 (Am. Compl. ¶ 571).  In Count X—plaintiff's § 1983 claim against Prosecutor Martin for failure to train—plaintiff alleges that Prosecutor Martin failed to supervise or train "subordinate [Assistant Prosecutor] Jacob Turner."  *Id.* at 106 (Am. Compl. ¶ 590).  Specifically, plaintiff alleges that Prosecutor "Martin knew that [Assistant Prosecutor] Turner was attending a[n] unlawful 2nd arraignment and knew or reasonably should have known that [Assistant Prosecutor] Turner's conduct would deprive [plaintiff] of . . . his Constitutional rights to a fair trial."  *Id.* at 107 (Am. Compl. ¶¶ 594–95).

None of these allegations or any others in the Amended Complaint allege that Prosecutor Martin acted outside his prosecutorial capacity.  To the contrary, the pleading against Prosecutor Martin references actions taken in his role as an advocate for the subdivision of the State of Kansas.  That is, plaintiff alleges that Prosecutor Martin failed to produce documents during the course of litigation and failed to train another municipal employee.  *Id.* at 5 (Am. Compl. ¶ 22); *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (granting prosecutorial immunity against failure to train claim, in part, because training requires "legal knowledge and the exercise of related discretion, *e.g.*, in determining what information should be included in the training,"

different from "administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like").[6]

Prosecutorial immunity thus shields Prosecutor Martin from plaintiff's individual capacity claims in Count VI (§ 1985 claim for interference with civil rights), Count VIII (§ 1983 claim for due process violations), and Count X (§ 1983 claim for failure to supervise and train). The court thus dismisses those claims. But claims against Prosecutor Martin in his official capacity remain.

### c.    Qualified Immunity

The Mission Defendants next argue that the Mission police officers sued here are entitled to qualified immunity. Plaintiff sues Officers Brown, Barnett, Eddings, and Hodge in their individual and official capacities. He asserts six claims against these officers:

- Count I:  § 1985 conspiracy to interfere with civil rights, Doc. 38 at 57–61 (Am. Compl. ¶¶ 343–69);

- Count III:  § 1983 claim for violating plaintiff's Fourth Amendment rights, *Id.* at 66–71 (Am. Compl. ¶¶ 410–59);

- Count IV:  § 1983 claim for violating plaintiff's First Amendment rights, *Id.* at 72–74 (Am. Compl. ¶¶ 460–468);

- Count V:  § 1983 conspiracy, *Id.* at 72–80 (Am. Compl. ¶¶ 469–97);

---

[6]    *Van de Kamp*'s holding easily encompasses the allegations here. The Amended Complaint alleges that Prosecutor Martin deprived plaintiff of his constitutional right to a fair trial. *See* Doc. 38 at 107. (Am. Compl. ¶¶ 591, 595). He did so, plaintiff alleges, by training a "subordinate" assistant prosecutor "to attend and participate in a 2nd arraignment of [plaintiff], when [plaintiff] had properly appealed the judgment of the City of Mission [Municipal] Court." *Id.* at 106 (Am. Compl. ¶ 591). Such a failure is more directly connected to tasks "intimately associated with the judicial phase of the criminal process" than was some of the conduct at issue in *Van de Kamp*. *See, e.g.*, 555 U.S. at 344 (reversing Ninth Circuit and immunizing prosecutor against claim that he had "failed to create any system for the Deputy District Attorneys handling criminal cases to access information" about benefits provided to jailhouse informants and "other impeachment information").

- Count VI:  § 1985 conspiracy to interfere with civil rights, *Id.* at 80–84 (Am. Compl. ¶¶ 498–518); and

- Count VIII:  § 1983 claim for violating plaintiff's Fourteenth Amendment procedural due process rights, *Id.* at 97–102 (Am. Compl. ¶¶ 548–74).

Separately, plaintiff asserts a claim against Officer Hodge alone:  Count IX, a § 1983 claim against Officer Hodge in his personal and official capacity for failure to supervise and train.  *Id.* at 66–84, 97–106 (Am. Compl. ¶¶ 410–518, 548–87).  The Mission Defendants ask the court to dismiss these individual capacity claims because the officers are entitled to qualified immunity. The court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The qualified immunity analysis has two prongs.  To avoid qualified immunity, the plaintiff must:  (1) allege facts that "make out a violation of a constitutional right," and (2) allege that "the right at issue was clearly established at the time of defendant's alleged misconduct."  *Id.* at 232 (citation and internal quotation marks omitted).  A court has discretion to determine which of these two prongs it should address first, "in light of the circumstances in the particular case at hand."  *Id.* at 236.  Here, the court's analysis begins and ends with the second prong—whether the constitutional rights at issue were clearly established.

When confronted with the qualified immunity defense, the plaintiff bears the burden to show that the rights he claims were violated were clearly established ones.  *Callahan v. Unified*

*Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1027 (10th Cir. 2015).  Plaintiff here fails that burden.  In fact, he doesn't even try to shoulder it.  *See* Doc. 72.

The Mission Defendants raise the qualified immunity defense in their motion.  Doc. 53.  But plaintiff neither addresses the defense nor argues that the constitutional rights he invokes were clearly established ones.  *See* Doc. 72.  Instead, plaintiff dedicates his entire Response to just one issue:  his argument about Rule 12(c) and that the pleadings are not yet closed.  *Id.*  The court thus grants Officers Brown, Barnett, Eddings, and Hodge qualified immunity on all of plaintiff's claims against them in their  individual capacities.  The official capacity claims against those officers remain.

### d.    Immunity Summary

In sum, the court's immunity analysis ends all the individual capacity claims asserted against Judge Drill, Prosecutor Martin, and the four police officers for the City of Mission.  The court thus dismisses all those claims.  The court also dismisses the official capacity claim against Judge Drill.  Remaining, however, are the official capacity claims against the other defendants.  And plaintiff asserts all the same claims against these five individuals in their official capacity, as well.  Next, part two addresses all of plaintiff's official capacity claims.

### 2.    Official Capacity Claims

### a.    Conspiracy to Interfere with Civil Rights (Count I)

Count I of the Amended Complaint brings a § 1985 official capacity claim for conspiracy to interfere with plaintiff's civil rights, naming Officers Brown, Barnett, Eddings, and Hodge as defendants.  The court already has addressed Count I in its analysis of the Salvation Army Defendants' Motion to Dismiss.  *See* Section III.C.  It concluded that Count I fails because plaintiff hasn't alleged plausibly that the Salvation Army Defendants conspired with Mission police officers.  *Id.*  There's no reason to repeat that analysis, here.  The court thus dismisses

plaintiff's official capacity claim for conspiracy to interfere with civil rights against Officers
Brown, Barnett, Eddings, and Hodge.

###   b.   Unreasonable Seizure (Count III)

Count III of the Amended Complaint brings a § 1983 official capacity claim for
unreasonable seizure against Officers Brown, Barnett, Eddings, and Hodge.  It theorizes that
these defendants violated plaintiff's Fourth Amendment rights.  Doc. 38 at 66–71 (Am. Compl.
¶¶ 410–59).

Plaintiff alleges that the officers violated his right against unlawful seizure on two
distinct occasions: *first*, when the officers detained plaintiff in the parking lot of the Salvation
Army store without probable cause; and *second*, when the officers arrested plaintiff without
probable cause.  *Id.*  The Mission Defendants argue that probable cause existed for the officers to
perform an investigative detention outside the store.  Doc. 54 at 18.  And, Mission Defendants
argue, "probable cause existed" to arrest plaintiff based on "statements [by] the Salvation Army
personnel and customers."  *Id.* at 19.  Finally, they argue that the court should reject plaintiff's
unreasonable seizure claim because "§ 1983 claims which would render a conviction invalid are
not cognizable unless and until the underlying conviction has been invalidated or expunged."  *Id.*
(citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)).  The court begins with the Mission
Defendants' last argument.

"Under *Heck v. Humphrey*, 'if a § 1983 judgment in favor of the plaintiff would
necessarily imply the invalidity of his conviction or sentence . . . , the complaint must be
dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been
invalidated.'"  *Loggins v. Pilshaw*, 838 F. App'x 323, 327 (10th Cir. 2020) (internal brackets
omitted) (citing *Heck*, 512 U.S. at 487).  Here, plaintiff claims that the officers unlawfully seized

him when they detained him outside the Salvation Army store and arrested him for criminal trespass and disorderly conduct.

The Amended Complaint asserts that the City of Mission Municipal Court found plaintiff guilty of those charges. *See* Doc. 38 at 82, 95 (Am. Compl. ¶¶ 504, 537). If plaintiff's unlawful seizure claim were to succeed, it necessarily implies the invalidity of his conviction in municipal court. *Esquibel v. Williamson*, 421 F. App'x 813, 817–18 (10th Cir. 2010) (holding that *Heck* bars plaintiff's § 1983 claim that officers detained plaintiff without probable cause because, if successful, the claim necessarily implies that plaintiff's state criminal conviction is invalid); *Hachmeister v. Taylor*, No. 13-3205-SAC, 2014 WL 547066, at *5 (D. Kan. Feb. 11, 2014) (invoking *Heck* to deny plaintiff's § 1983 claim that officers lacked probable cause to search and seize him because "a judgment in plaintiff's favor on any of these counts would imply the invalidity of his recent state criminal convictions"); *Pledger v. Ziegler*, No. 16-2797-JAR-TJJ, 2017 WL 2374711, at *3 (D. Kan. June 1, 2017) (same); *Tallie v. Pittsburg Police Dep't*, No. 22-3152-JWL-JPO, 2023 WL 130545, at *2 (D. Kan. Jan. 9, 2023) (same).

The Complaint's allegation that the Kansas Courts convicted him on the charges leading to his arrest, along with the absence of any allegation that his convictions were invalidated dooms Count III's claims. *See Loggins*, 838 F. App'x at 327. Plaintiff hasn't alleged that his criminal trespass and disorderly conduct charges have been invalidated or expunged. The court thus dismisses plaintiff's official capacity claim for unreasonable seizure against Officers Brown, Barnett, Eddings, and Hodge.

### c.    Retaliatory Arrest (Count IV)

Next, plaintiff claims that Officers Barnett, Brown, Eddings, and Hodge arrested him in retaliation for exercising his free speech right inside the Salvation Army store. Doc. 38 at 71–73 (Am. Compl. ¶¶ 460–68). To assert a First Amendment retaliation claim, plaintiff must allege:

(1) he "was engaged in constitutionally protected activity"; (2) defendants' "actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation marks and citation omitted). "In addition to the three *Worrell* elements, a First Amendment retaliation claim based on a false arrest requires a separate 'threshold showing'—generally, a plaintiff must show a false arrest." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020) (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019)). The "'plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.'" *Id.* (quoting *Nieves*, 139 S. Ct. at 1724). Plaintiff can't plausibly plead this requisite here.

As discussed in the unreasonable seizure section, above, *Heck v. Humphrey* prohibits the court from entering a judgment for plaintiff on his § 1983 claim on the premise that the officers lacked probable cause for arrest. 512 U.S. at 487; *see Esquibel*, 421 F. App'x at 817; *Hachmeister*, 2014 WL 547066, at *5; *Pledger*, 2017 WL 2374711, at *3; *Tallie*, 2023 WL 130545, at *2. Such an outcome necessarily implies that plaintiff's Municipal Court convictions for criminal trespass and disorderly conduct are invalid. Plaintiff hasn't pleaded that his convictions were invalidated. Indeed, he alleges just the opposite—that both Mission's Municipal Court and the Kansas state trial court of general jurisdiction convicted him again in a de novo appeal. The court thus dismisses plaintiff's retaliatory arrest claim against Officers Barnett, Brown, Eddings, and Hodge in their official capacities.

### d.    Conspiracy to Falsely Arrest (Count V)

Plaintiff also sues Officers Barnett, Brown, Eddings, and Hodge for conspiracy to falsely arrest him.[7]  Doc. 38 at 72–80 (Am. Compl. ¶¶ 469–97).  Plaintiff alleges that the officers arrested him without probable cause because they "did not personally view conduct that would meet an element of" criminal trespass or disruptive behavior.  *Id.* at 74 (Am. Compl. ¶ 473).  He argues that the arrest violates his equal protection rights because he was allowed inside the Salvation Army's store—in other words, he wasn't trespassing.  *See id.* at 74–80 (Am. Compl. ¶¶ 469–97).  Plaintiff also argues that the officers discriminated against him based on his refusal to wear a mask.  *See id.* at 80–84 (Am. Compl. ¶¶ 498–518).

To succeed on this version of a § 1983 conspiracy claim, plaintiff "must allege both the existence of a conspiracy and the deprivation of a constitutional right." *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995).  To "recover under a § 1983 conspiracy theory, a plaintiff must plead . . . not only a conspiracy, but also an actual deprivation of rights; pleading . . . of one without the other will be insufficient." *Id.* (citation omitted).

Plaintiff's first contention—that the officers conspired to falsely arrest him—fails on *Heck v. Humphrey* grounds.  512 U.S. 487.  This binding Supreme Court precedent forbids this court from issuing a § 1983 judgment concluding that the officers lacked probable cause to arrest plaintiff because such a result necessarily implies the invalidity of convictions by the two Kansas courts.  The court thus dismisses plaintiff's retaliatory arrest claim against Officers Barnett, Brown, Eddings, and Hodge.

---

[7]    The Amended Complaint fails to identify the type of conspiracy that the officers allegedly engaged in with one another.  Doc. 38 at 74.  The Mission Defendants infer that the Amended Complaint alleges that the officers conspired to falsely arrest plaintiff.  Doc. 54 at 21.  Plaintiff never disputes this characterization of his claim in Count IV.  *See generally* Doc. 72.  The court thus applies this interpretation of Count IV.

e.    **Conspiracy to Violate Equal Protection Rights (Count VI)**

Plaintiff next sues Officers Barnett, Brown, Eddings, and Hodge, as well as Judge Drill[8] and Prosecutor Martin for conspiracy to interfere with civil rights.  Doc. 38 at 80–84 (Am. Compl. ¶¶ 498–518).  Plaintiff contends that the officers "conspired to deny [him] the right to be free from discrimination in a place of public accommodation."  *Id.* at 83 (Am. Compl. ¶¶ 511– 12).  And Judge Drill and Prosecutor Martin conspired against him, plaintiff asserts, "by initiating, prosecuting and fining [him] for lawful conduct."  *Id.* at (Am. Compl. ¶ 513).  Then, the officers, Judge Drill, and Prosecutor Martin all conspired to further the officers' unlawful acts and to deny plaintiff equal protection and equal privileges and immunities under the law.  *Id.* at 83–84 (Am. Compl. ¶ 517).

To succeed on this § 1983 conspiracy claim, plaintiff "must allege both the existence of a conspiracy and the deprivation of a constitutional right."  *Thompson*, 58 F.3d at 1517.  To "recover under a § 1983 conspiracy theory, a plaintiff must plead . . . not only a conspiracy, but also an actual deprivation of rights; pleading . . . of one without the other will be insufficient."  *Id.* (citation omitted).

Plaintiff here has failed to allege plausibly that the officers and Prosecutor Martin had an agreement to interfere with plaintiff's civil rights.  While "an express agreement among conspirators or knowledge of the exact nature of the conspiracy is not required, a plaintiff alleging a [§] 1983 conspiracy must plead facts which at least support an inference of a shared conspiratorial objective."  *Beasley v. Noel*, 5 F.3d 545 (10th Cir. 1993) (citation omitted).  The Amended Complaint never alleges any facts permitting a finding or inference about how the

---

[8]        As explained above, the court dismisses this claim against Judge Drill in both his official and individual capacities because Judge Drill is entitled to judicial immunity.  The court mentions Judge Drill in this section only to report the gist of the pertinent allegations.

officers and Prosecutor Martin agreed "upon a common, unconstitutional goal," or took "concerted action . . . to advance that goal[.]" *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (citations and internal quotation marks omitted).  Instead, plaintiff pleads conclusory allegations hoping they'll sustain his claim.  They don't.  Plaintiff's pleading offers no more than "labels and conclusions"—and as the Supreme Court has emphasized, conclusions unsupported by alleged facts just won't do.  *Iqbal*, 556 U.S. at 678.

The court thus dismisses plaintiff's official capacity claim asserting conspiracy to violate equal protection rights against Officers Barnett, Brown, Eddings, and Hodge, as well as Prosecutor Martin.

### f.    Due Process (Count VIII)

Plaintiff also claims that Officers Brown, Barnett, Eddings, and Hodge, as well as Prosecutor Martin violated his right to procedural due process.  Doc. 38 at 97–102 (Am. Compl. ¶¶ 548–74).  He asserts that defendants did so when:  the officers took plaintiff to jail instead of a police station; they delayed plaintiff's hearing before a magistrate judge; and plaintiff wasn't personally served a written complaint with a notice to appear.  *Id.*  The Mission Defendants ask the court to dismiss this claim because Kansas law preempts the due process claim.  Doc. 54 at 26.

The Mission Defendants thus raise *Parratt* abstention.  *Parratt v. Taylor*, 451 U.S. 527 (1981).  In *Parratt*, the Supreme Court held that a prisoner couldn't sue prison officials under § 1983 for depriving him of his property without due process when state law provides an adequate post-deprivation remedy.  *Id.* at 543–44.  So, *Parratt* bars plaintiff's procedural due process claim under § 1983 if Kansas provides plaintiff adequate post-deprivation remedy. Indeed, Kansas recognizes a tort claim for malicious prosecution.  The Kansas Supreme Court has held that this state law tort claim provides an adequate remedy for plaintiffs who assert

procedural due process denial claims, thus precluding a § 1983 claim for due process violation. *See Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994) (holding that plaintiffs "were afforded an adequate state remedy under the common-law tort claim of malicious prosecution and cannot now seek relief under § 1983"); *Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022); *Albright v. Oliver*, 510 U.S. 266, 284 (1994) (Kennedy, J., concurring) ("[A] state actor's random and unauthorized deprivation of that interest cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy.").

Kansas's malicious prosecution law provides plaintiff with a remedy. And plaintiff has made no argument that it's inadequate. So, his claim in Count VIII cannot state a plausible claim. The court dismisses plaintiff's official capacity due process claim against Officers Brown, Barnett, Eddings, and Hodge, as well as Prosecutor Martin.

### g.   Failure to Supervise and Train (Counts IX & X)

Plaintiff brings two failure to supervise or train claims—one against Prosecutor Martin and another against Officer Hodge. The court follows the Tenth Circuit's custom and addresses the two claims together. *See Est. of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty. Colo.*, 30 F.4th 1181, 1189 (10th Cir. 2022) ("For a municipality (or sheriff, in this case) to be held liable for *either* a failure-to-train *or* failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation.") (emphases added); *Bond v. Regalado*, No. 22-5065, 2023 WL 7014047, at *7 (10th Cir. Oct. 25, 2023) (applying same standard to failure to train and failure to supervise claims).

To establish liability on a failure to supervise or train theory, plaintiff must: (1) show a policy or custom, which can take several forms, including formal policies, informal customs, decisions of employees with final authority, or failure to supervise or train employees; (2) establish "a direct causal link between the policy or custom and the injury alleged;" and (3)

36

"demonstrate that the . . . action was taken with deliberate indifference [for] its known or obvious consequences." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283–84 (10th Cir. 2019) (citations and internal quotation marks omitted). A "city may not be held liable for failure to train 'when there has been no underlying constitutional violation by one of its employees.'" *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1187 (10th Cir. 2020) (citing *Williams v. City & Cnty. of Denver*, 99 F.3d 1009, 1018 (10th Cir. 1996)). So, the first step in evaluating whether plaintiff has pleaded adequately facts to allege a plausible failure to train or supervise claim asks whether plaintiff has sustained a constitutional violation by the allegedly undertrained subordinate.

### i.      Failure to Train Against Prosecutor Martin (Count X)

Beginning with his claim in Count X, plaintiff sues Prosecutor Martin for failing to train Assistant Prosecutor Jacob Turner. Plaintiff alleges that Assistant Prosecutor Turner deprived plaintiff of his rights when he "stood silent" at the second arraignment in plaintiff's appeal of his Municipal Court convictions to a Kansas state court. Doc. 38 at 106–07 (Am. Compl. ¶ 593). Plaintiff identifies the constitutional violation he claims more specifically. *See id.* (Am. Compl. ¶¶ 593–96). In summary form, he alleges:

- Kan. Stat. Ann § 22-3610(a) governs trials when a case is appealed from a municipal court to a district court. *Id.* at 106–07 (Am. Compl. ¶ 593).

- Assistant Prosecutor Turner "stood silent" as Judge Curtis Samples of the District Court of Johnson County, Kansas "willingly ignored the ministerial duty" imposed by Kan. Stat. Ann. § 3610(a). *Id.*

- Prosecutor Martin knew that Assistant Prosecutor "Turner was attending a[n] unlawful 2nd arraignment" and he "knew or reasonably should have known that

Turner's conduct would deprive [plaintiff] of these rights[.]" *Id.* at 107 (Am. Compl. ¶ 594).

- That deficiency "actually caused [Assistant Prosecutor] Turner to deprive [plaintiff] of his Constitutional rights to a fair trial." *Id.* (Am. Compl. ¶ 595).

- Prosecutor "Martin['s] conduct was so closely related to the deprivation of [plaintiff's] rights as to be the moving force that caused the ultimate injury." *Id.* (Am. Compl. ¶ 596).

These allegations prove insufficient to survive for two distinct reasons.

*First*, the sum of plaintiff's factual allegations provides "no more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As example, plaintiff pleads no facts which, if true, could deprive plaintiff of his constitutional right to a fair trial. Instead, he merely asserts—in wholly conclusory fashion—that the proceedings in a Kansas state court didn't comply with a *Kansas* statute. But he pleads no facts tending to show how the Kansas court deviated from the statute. And more importantly, plaintiff pleads no facts that, if true, could support a finding that the purportedly deficient arraignment in the Kansas state court deprived him of his constitutional right to a fair trial. Plaintiff merely alleges it is so because he concludes it is so. In short, Count X provides no more than "threadbare recitals of the elements of a course of action" and after *Ashcroft v. Iqbal*, that just won't do. 556 U.S. 662.

*Second*, and far more problematic for plaintiff, Count X's failure to train theory never pleads a claim to relief "that is plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. 570). Remember that here, the full Motion to Dismiss record includes the state Judge's ruling

against a keystone in plaintiff's failure to train theory.[9]  Namely, Johnson County, Kansas

District Court Judge Joyce[10] already addressed the "unlawful 2nd arraignment" argument plaintiff

now brings before this court.  *Compare* Doc. 38 at 107 (Am. Compl. ¶ 594) *with* Doc. 54-2 at 3

(Judge Joyce's Order).  But the Kansas state court judge was having none of it.  Judge Joyce's

Order squarely rejected plaintiff's "2nd arraignment" argument, concluding, that the "arraignment

in district court was proper."  Doc. 54-2.

Judge Joyce's Order means that Count X's failure to train claim alleges this theory:

Prosecutor Martin encroached on plaintiff's constitutional rights by failing to instruct his

Assistant Prosecutor not to "st[and] silent" when a state court judge applies state law.  This

theory just doesn't "state a claim that is plausible on its face" because plaintiff hasn't pleaded

---

[9]     "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion."  *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).  But courts also may consider "'matters of which a court may take judicial notice.'"  *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

The court takes judicial notice of Judge Joyce's May 17, 2023, Order from the Johnson County District Court.  Doc. 54-2; *see United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (recognizing a court may take judicial notice of docket information from another court); *see also Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego*, 931 F. Supp. 2d 1120, 1123 (D. Kan. 2013), *aff'd*, 564 F. App'x 345 (10th Cir. 2014) ("[T]he Court may take judicial notice of public records from other proceedings.").

[10]     Judge Joyce explained his reasoning this way:

> Defendant argues that he was arraigned twice in the present case, which he argues constituted a violation of his statutory rights.  Consistent with municipal court policy, the Defendant was initially arraigned in municipal court on February 17, 2022.  After appealing the municipal court's ruling on his case, Defendant was then arraigned in the Johnson County District Court on October 12, 2022.  Despite Defendant's concerns about this process, being arraigned in district court following a municipal [court] appeal is not a violation of the Defendant's statutory rights.  Defendant exercised his right to a trial de novo, and arraignment in the District Court is part of the process of the trial de novo.

Doc. 54-2 at 3 (citations omitted).

"factual content" allowing the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 US at 556).

### ii.     Failure to Supervise and Train Against Officer Hodge (Count IX)

Count IX suffers a similar deficiency. This claim sues Officer Hodge for failing to train and supervise Officers Brown, Barnett, and Eddings. Doc. 38 at 102–05 (Am. Compl. ¶¶ 547–87). Plaintiff argues that the officers wouldn't have unlawfully arrested and imprisoned plaintiff had Officer Hodge properly trained them. *Id.*

Plaintiff's unlawful arrest argument alleges that Officers Brown, Barnett, and Eddings violated his constitutional right to be free from unreasonable search or seizure. *Id.* at 103 (Am. Compl. ¶¶ 577–81). Specifically, the Amended Complaint alleges that:

- Officer "Hodge knew that [plaintiff] was asked to leave the Salvation Army Store for refusing an unwanted medical treatment." *Id.* (Am. Compl. ¶ 580).

- Plaintiff "was arrested without probable cause." *Id.* (Am. Compl. ¶ 577).

- Yet, Officer "Hodge failed to intervene and prevent the false arrest by [Officers] Brown, Barnett and Eddings [when they] deprived [plaintiff] of his rights under the United States Constitution to be free from arrest without probable cause." *Id.* (Am. Compl. ¶ 579).

Plaintiff's arrest without probable cause argument fails for two distinct reasons.

*First*, plaintiff's claim is wholly conclusory. Again, his factual allegations provide "no more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Plaintiff asserts he was arrested without probable cause, and alleges that Officer Hodge knew plaintiff left the Salvation Army store after refusing to wear a mask. But that fact, if true, doesn't tend to show that Officers Barnett, Brown, and Eddings

lacked probable cause to arrest plaintiff.  That's because the Amended Complaint pleads no facts explaining why Officer Hodge's knowledge that plaintiff left the Salvation Army after deciding not to wear a mask means that Officers Brown, Barnett, or Eddings lacked probable cause to arrest plaintiff for criminal trespassing.  Plaintiff's logic doesn't yield any factual content to his bald conclusion that he "was arrested without probable cause."  Doc. 38 at 103 (Am. Compl. ¶ 577).

*Second*, even if plaintiff's allegations weren't conclusory, his unlawful arrest argument fails for a second reason—it's precluded on *Heck v. Humphrey* grounds.  512 U.S. at 487. Plaintiff argues that the officers wouldn't have arrested plaintiff without probable cause had Officer Hodge properly trained them.  This argument rests on the premise, of course, that the officers unlawfully arrested plaintiff.  The court may not issue a § 1983 judgment concluding that the officers lacked probable cause to arrest plaintiff because plaintiff's convictions in Mission's Municipal Court necessarily establish that the officers had probable cause to arrest him.  So, plaintiff's claim that Officer Hodge failed to train Officers Brown, Barnett, and Eddings because they arrested him without probable cause fails.

The Amended Complaint next alleges that Officers Brown, Barnett, and Eddings wouldn't have violated plaintiff's right to be free from unlawful imprisonment had Officer Hodge properly trained them in Kansas law.  Doc. 38 at 104–06 (Am. Compl. ¶¶ 582–87). Specifically, plaintiff alleges:

- Kan. Stat. Ann. § 12-4213(a) requires police officers to take an arrestee immediately to the police station.  *Id.* at 104 (Am. Compl. ¶ 583).

- And Kan. Stat. Ann. § 22-2901 requires police officers to take an arrestee "before the nearest available magistrate" judge without "unnecessary delay[.]" *Id.* (Am. Compl. ¶ 583).

- Yet, Officer "Eddings never mentioned taking [plaintiff] to the police station" or "to the nearest magistrate[.]" *Id.* at 105 (Am. Compl. ¶ 585).

- And Officer Hodge encouraged Officer "Barnett to ignore the mandatory duty to transport" plaintiff to the police station, when he agreed with Officer Barnett's decision to take plaintiff directly to jail. *Id.* at 104–05 (Am. Compl. ¶¶ 582–84).

- So, Officer Hodge failed to train Officers Brown, Barnett, and Eddings on Kan. Stat. Ann. §§ 12-4213 or 22-2901 "as they participated and willingly ignored standard legal process as commanded by the Kansas Legislature on procedure following arrest." *Id.* at 105 (Am. Compl. ¶ 586).[11]

- This, plaintiff alleges, showed "gross and reckless disregard of [plaintiff's] constitutional rights by the Mission Police officers." *Id.* at 104 (Am. Compl. ¶ 583).

Plaintiff's unlawful imprisonment claim fails for two reasons.

*First*, Count IX's unlawful imprisonment theory fails to plead a claim to relief "that is plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). While plaintiff alleges the officers violated his constitutional rights, he fails to identify *which* constitutional right the officers violated. Instead, plaintiff focuses on statutory violations under Kansas law. Plaintiff's state law statutory violations don't suffice because failure to supervise and train claims require plaintiff to allege a federal constitutional violation. *Crowson*, 983 F.3d at 1187.

---

[11]     Plaintiff alleges no facts, other than this one, specific to Officer Hodge's failure to train Officer Brown under Kansas law.

*Second*, even if plaintiff had alleged a constitutional violation—that Officers Brown, Barnett, and Eddings lacked probable cause to imprison him, for example—the claim would fail under *Heck v. Humphrey* for reasons explained above. 512 U.S. at 487. The court thus dismisses Count IX's official capacity for failure to train claim against Officer Hodge.

The court dismisses Counts IX and X's failure to train and supervise claims.

### 3.    Federal Claim Against Municipal Defendant (Count VII)

Finally, plaintiff brings a municipal liability claim—often called a *Monell* claim—against the City of Mission. Doc. 38 at 84–97 (Am. Compl ¶¶ 519–47). To assert a federal claim against a municipal entity, plaintiff must establish that a government policy or custom caused his injuries. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). And to assert municipal liability under § 1983, plaintiff must demonstrate that a state actor violated plaintiff's constitutional rights. *Hinkle*, 962 F.3d at 1226 (explaining that before a municipality can be held liable for a constitutional violation the plaintiff must show that an employee caused a constitutional violation under the municipality's policy).

Plaintiff's municipal liability claim here against the City of Mission fails as a matter of law because none of plaintiff's constitutional violation claims remain. Binding Supreme Court and Circuit precedent compels this conclusion. *See e.g.*, *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Williams*, 99 F.3d at 1018 (distinguishing between effect of granting qualified immunity and finding of "no underlying constitutional violation by one of [a municipality's] employees").

*Hinton* also establishes that courts properly may apply *Heller*'s holding at the summary judgment stage. *Hinton*, 997 F.2d at 782; *see also Arnold v. Olathe, Kansas, City of*, 550 F.

Supp. 3d 969, 990 (D. Kan 2021) (granting summary judgment on failure to train or supervise claim against municipality because court had granted summary judgment on all underlying constitutional claims against municipality's officers).  The court concludes that the same rule applies at the motion to dismiss stage.  The court thus dismisses plaintiff's municipal liability claim.

### D.      Judgment on the Pleadings Conclusion

Construing the City of Mission Defendants' Motion for Judgment on the Pleadings (Doc. 53) as a Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), judicial immunity immunizes Judge Drill from plaintiff's individual capacity and official capacity claims.  Prosecutorial immunity immunizes Prosecutor Martin from claims against him in his individual capacity.  And qualified immunity protects the officers from claims against them in their individual capacities.  Plaintiff's remaining claims against the Mission Defendants in their official capacities also fail.  The court thus dismisses Counts I and III–X without prejudice.  No constitutional violation claims remain.  So, the court dismisses plaintiff's municipal liability claim against the City of Mission without prejudice.  None of plaintiff's claims against the Mission Defendants remain.

### VI.      Plaintiff's State Law Claims

The Amended Complaint brings three Kansas state law claims against the Salvation Army Defendants:  Count XI (civil conspiracy claim against Keller and Riding); Count XII (false imprisonment claim against the Salvation Army, Keller, and Riding); and Count XIII (vicarious liability against the Salvation Army).  The Mission Defendants challenge plaintiff's state law claims to the extent that they extend to them.[12]   Doc. 54 at 10.  It doesn't matter, though,

---

[12]      The Mission Defendants note that it's "unclear from the content of the Amended Complaint whether [plaintiff] is asserting state law claims against the Mission Defendants."  Doc. 54 at 10 n.3.

whether Counts XI–III extend to the Mission Defendants.  The court has dismissed all federal claims and now declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction[.]"  Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7.  Also, notions "of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Our Circuit has expressed the preference that, when a district court dismisses all federal claims, it typically should decline to exercise supplemental jurisdiction over state law claims.  *See Smith v. City of Enid ex rel. City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (emphasis added)).  But still, the decision is committed to the district court's sound discretion.  *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004).

Here, the court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims. The court finds no compelling reasons to depart from our Circuit's general directive. Fairness and comity provide that a state court should resolve plaintiff's state law claims. So it is here.

## VII.       Conclusion

The court grants Salvation Army Defendants' Motion to Dismiss (Doc. 48) Counts I–III and XI–XIII against Salvation Army, Blanche Riding, and Kelly Keller. It grants Mission Defendants' Motion to Strike (Doc. 86). The court construes Mission Defendants' Motion for Judgement on the Pleadings (Doc. 53) as a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss. It thus grants Mission Defendants' Motion to Dismiss all federal claims. The court dismisses plaintiff's state law claims without prejudice. The court directs the Clerk to enter Judgment in accordance with this Memorandum and Order, and close this case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Salvation Army, Blanche Riding, and Kelly Keller's Motion to Dismiss (Doc. 48) is granted.

**IT IS FURTHER ORDERED THAT** defendants Megan Brown, Gregory Barnett, Tanner Eddings, Chad Hodge, David Martin, Keith Drill, and City of Mission, Kansas's Motion to Strike (Doc. 86) plaintiff's sur-reply (Doc. 85) is granted.

**IT IS FURTHER ORDERED THAT** defendants Megan Brown, Gregory Barnett, Tanner Eddings, Chad Hodge, David Martin, Keith Drill, and City of Mission, Kansas's Motion for Judgment on the Pleadings (Doc. 54), construed as a Motion to Dismiss, is granted.

**IT IS SO ORDERED.**

**Dated this 25th day of March, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

46